## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| DAVID J. ALVAREZ, III, JORDAN CRIST, and ROWLAND GLEED, Individually and on Behalf of Others Similarly Situated, § § § § § § § § § Plaintiffs, § § v. § § AMB-TRANS INC. d/b/a AMBTRANS § AMBULANCE, MAURICE SHANER, II, § MICHAEL HAWK, ANA ROMMEL, § DAVID L. SURINA, and DONNA § STEWART, Individually and in their § Official Capacity, § § Defendants. | Civil Action No. SA-11-CV-179-XR |

**ORDER**

On this day, the Court considered Defendants' Motion for Summary Judgment (Doc. No. 44). For the following reasons, the Motion is GRANTED IN PART AND DENIED IN PART.

**I. Background**

**<u>A. Factual Background</u>**

Plaintiffs David Alvarez, III, Jordan Crist, and Rowland Gleed bring this action individually and on behalf of all other similarly situated employees of Amb-Trans, Inc. d/b/a Ambtrans Ambulance (Amb-Trans) under the Fair Labor Standards Act (FLSA). Plaintiffs allege that Defendants Amb-Trans, Maurice Shaner, II, Michael Hawk, Ana Rommel, David L. Surina, and Donna Stewart violated the minimum and overtime wage provisions of the

FLSA. Plaintiffs seek actual damages, including regular wages, overtime pay, lost benefits and mental anguish, liquidated damages as provided by the FLSA, punitive damages, attorneys' fees and equitable relief.

**B. Procedural Background**

Plaintiffs filed their complaint in this Court on March 4, 2011. On October 5, 2011, the Court dismissed Plaintiff's *quantum meruit* claims after finding that they directly conflicted with whether the FLSA had been violated. (Order Regarding Oral Order on Mot. Dismiss, Oct. 5, 2011, Doc. No. 25). The Court also dismissed all claims against Defendant Mitchell Shaner and ordered Plaintiffs to amend their complaint by November 9, 2011, to address improper pleadings. *Id.*[1] Defendants filed a motion for summary judgment on June 15, 2012, contending that Amb-Trans is not covered by the FLSA and, even if it were covered, that the available evidence is not sufficient to show a violation of the Act. (Doc. No. 44). Plaintiffs filed a motion for extension of time to file a response to Defendants' motion, which the Court granted, extending the deadline to file a response to July 31, 2012. (Doc. No. 46). On August 7, 2012, a week after the deadline had passed, Plaintiffs filed another motion for an extension of time to file a response. (Doc. No. 49). The Court denied the motion but advised Plaintiffs that the Court would consider any response filed before the Court ruled on the motion for summary judgment. (Tex Order, August 8, 2012). As of this date Plaintiffs have still not filed a response to Defendants' motion.

## II. Standard of Review

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment . . . against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

---

[1] Plaintiffs filed their amended complaint on November 9, 2012. (Doc. No. 26).

2

*Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citation omitted).

### III. Analysis

Plaintiffs allege two causes of action under the FLSA. First, Plaintiffs allege that they are entitled to relief based on the anti-retaliation provision of the Act. Second, Plaintiffs allege that Defendants violated the regular and overtime payment requirements of the FLSA. Because both causes of action hinge on whether Plaintiffs are entitled to FLSA protection, the Court must first consider the issue of FLSA coverage.

### A. Coverage Under the FLSA

To establish coverage under the FLSA, an employee must demonstrate that he was either (1) engaged in the production of goods for commerce ("individual coverage") or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce ("enterprise coverage"). *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)). Either individual or enterprise coverage is sufficient to invoke FLSA protection. *Id.* The employee bringing the claim under the FLSA has the burden of establishing that he is entitled to the FLSA's protections. *See Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 830 (5th Cir. 2007) (per curiam).

The Supreme Court has made clear that the FLSA extends federal control "throughout the farthest reaches of the channels of interstate commerce." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 567, 63 S. Ct. 332, 87 L. Ed. 469 (1943). The Fifth Circuit has also emphasized that no de minimis rule applies to the FLSA; any regular contact with commerce, no matter how small, will result in coverage. *Marshall v. Victoria Trans. Co., Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979).

In this case, Plaintiffs allege that they are afforded FLSA protection predicated on both individual and enterprise coverage.

### 1. Individual Coverage

Individual coverage under the FLSA is established if the employee is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). The test to determine whether an employee is personally engaged in commerce is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio*, 474 F.3d at 829 (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324, 80 S. Ct. 739, 4 L. Ed. 2d 753 (1960)). An employee is considered to be engaged in the production of goods for commerce if "such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. § 203(j). Courts have generally found employees of ambulance companies to be individually covered under the FLSA. *See Benson v. Universal Ambulance Serv., Inc.*, 675 F.2d 783 (6th Cir. 1982) (upholding a district court's finding that employees of an ambulance company were covered by the FLSA because the employees responded to emergencies "on streets and highways over which flows significant commerce between the states"); *Felker v. Sw. Emergency Med. Serv., Inc.*, 521 F. Supp. 2d 857 (S.D. Ind. 2007) (finding that EMTs and ambulance drivers were engaged in interstate commerce because, as a daily part of their job duties, they had to be prepared to respond to accidents on public highways and streets); *Wirtz v. A-1 Ambulance Serv., Inc.*, 299 F. Supp. 197 (E.D. Ark. 1969) (holding that employees of an ambulance company were engaged in interstate commerce because they responded to emergencies occurring on city streets and state and local highways); *Kelly v. Ballard*, 298 F. Supp. 1301 (S.D. Cal. 1969) (holding that ambulance drivers and attendants were individually engaged in

commerce because they were employed to answer emergency calls to attend to accident victims on public streets and highways).

Given the broad reach of the FLSA and the general consensus of federal courts that employees of ambulance companies are covered under the Act, the Court finds that Plaintiffs in this case are all individually covered. In his affidavit, Maurice Shaner, II, states that "Amb-Trans typically provides ambulance service to patients who need transportation to medical appointments and who are not ambulatory." (Doc. No. 44, Ex. A, 1). Shaner later states that "Amb-Trans only provides transportation services for patients within Bexar County." *Id.* at 4. Providing vehicular transportation to medical appointments in Bexar County implies that Amb-Trans and its employees routinely avail themselves of road systems that facilitate interstate commerce. Furthermore, Shaner also asserts in his affidavit that many patients paid Amb-Trans' through Medicare. Medicare is a national program administered by the U.S. government, so patients who pay Amb-Trans through Medicare create a direct link between the federally funded program and the services that Amb-Trans and its employees provide. Therefore, the Court finds that Plaintiffs can invoke individual coverage under the FLSA.[2]

Having found that Plaintiffs' are covered under the FLSA, the Court must now consider whether Plaintiffs' retaliation and improper wages claims can withstand Defendants' motion for summary judgment. The Court will consider each claim in turn.

**B. Retaliation**

**1. Legal Standard**

---

[2] Because the Court has found that Plaintiffs are all individually covered under the FLSA, the Court need not consider whether enterprise coverage applies.

The FLSA provides that it shall be unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint." 29 U.S.C. § 215(a)(3).

To establish a *prima facie* case for retaliation under the FLSA, a plaintiff must show (1) participation in protected activity under the FLSA; (2) adverse employment action; and (3) a causal link between the activity and the adverse action. *Hagan v. Echostar Satellite*, 529 F.3d 617, 624 (5th Cir. 2008) (citation omitted). If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *Id.* If the defendant can do so, the burden then shifts back to the plaintiff to demonstrate that the defendant's "proffered reason is a pretext for discrimination." *Id.*[3]

**2. Analysis**

    **a.** *Prima Facie* **Case for Retaliation**

    **i.** *Participation in Protected Activity*

An informal, internal complaint may constitute protected activity under the FLSA. *Hagan*, 529 F.3d at 626. However, not all "vague expressions of discontent are actionable as complaints." *Id.* (citation omitted). Rather, the informal complaint must concern some violation of law. *Id.* Oral complaints can be sufficient to constitute protected activity. *Kasten v. Saint-Gobain Performance Plastics Corp.*, --- U.S. ---, 131 S. Ct. 1325, 1336, 179 L. Ed. 2d 379 (2011).

    *Alvarez*. Alvarez states that he talked to his manager, Kevin, about his last two paychecks before he left Amb-Trans. (Doc. No. 44, Ex. D, 36:2-5). Specifically, Alvarez

---

[3] This burden-shifting framework was set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for application in Title VII cases. It has been applied to retaliation claims under the FLSA as well. *See Hagan*, 529 F.3d at 624.

alleges that he told his manger that he was not getting paid the full amount of overtime that he was supposed to receive, and that the amount of hours for which he was supposed to be getting paid were not accurate. *Id.* at 36:10-19. Since Alvarez's statement was to a supervisor in the company and regarded improper payment, his statement would constitute protected activity under the FLSA.

*Crist.* Crist alleges that he complained about his pay to management several times. (Doc. No. 44, Ex. E, 22:10-17). Specifically, Crist says he complained that he was not receiving pay for days that he came into work on scheduled days off. *Id.* Again, since Crist's statements were to a supervisor and concerned improper payments, his complaints would constitute protected activity.

*Gleed.* In the excerpts of his deposition that Defendants provide, Gleed states that he never filed a complaint with anyone at the company about not getting paid proper wages. (Doc. No. 44, Ex. G, 7:12-15). He also states that he did not complain about improper pay to either his managers or anyone else at Amb-Trans. *Id.* at 7:21-8:1. Thus, Gleed's statements make it clear that he did not express his concerns about improper pay, either orally or through a written complaint, while he was an employee at Amb-Trans. Plaintiffs have not produced any evidence demonstrating that he engaged in any other type of protected activity under the FLSA either. Therefore, there is not sufficient evidence on the record to support a finding that Gleed engaged in protected activity.

### ii. *Adverse Employment Action*

A plaintiff asserting a retaliation claim must show that the employer took an action that "could well dissuade a reasonable worker" from engaging in protected activity. *Burlington N.*

*& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (recognizing the *Burlington Northern* standard as the controlling standard for evaluating adverse employment actions in the context of retaliation claims under Title VII). In the context of a retaliation claim, the definition of an adverse employment action is not limited to actions that affect the "terms and conditions of employment" but rather "extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.* at 64, 67, 12 S. Ct. 2405.

*Alvarez*. In his deposition, Alvarez states that he was taken off of his shift for a week and replaced. (Doc. No. 44, Ex. D, 21:11-13). Because he was taken off of his shift, Alvarez believed he was no longer needed at the company. *Id.* After "about a week" of not being on the schedule, Alvarez states that someone from Amb-Trans "called [him] back" and "wanted [him] to come work." *Id.* at 21:15-19. However, Alvarez declined to go back to the company because of "everything that had happened and gone on between [them]." *Id.* Alvarez then filed for unemployment. *Id.* at 21-22.

The act of taking Alvarez off of the schedule for a week would be sufficient to dissuade a reasonable employee from making a complaint. Being taken off of the schedule entails a loss of income, a possible negative stigma within the company and, since Alvarez was taken off of the shift for an indefinite period of time, uncertainty and angst as to whether finding another job would be required. Consequently, Plaintiff Alvarez has produced sufficient evidence for a juror to find that an adverse employment action was taken against him.

*Crist*. In his deposition, Crist does not allege that he was terminated from the company, demoted, or reassigned at all. Crist merely alleges that he was being paid improperly. (*See*

Doc. 44, Ex. E, 22:10-18). Thus, Crist has failed to produce sufficient evidence to establish that any adverse employment action was taken against him.

### iii. *Causal Link*

Temporal proximity alone may be sufficient to establish a causal link only if the proximity is "very close." *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254 (5th Cir. 2011) (unpublished) (citing *Clark Cnty. Sch. Dist. V. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam)). "The causal link required by the third prong of the *prima facie* case does not rise to the level of a 'but for' standard." *Gee v. Pincipi*, 289 F.3d 342, 345 (5th Cir. 2002) (italicization added).

*Alvarez*. Alvarez states that the only time he ever talked to his supervisor about his pay was in regard to his last two paychecks before he left the company. (Doc. 44, Ex. D, 36:2-5). Because he alleges that he complained about his pay just a few weeks before he left the company, Alvarez's statement shows very close temporal proximity between his complaint and his removal from the schedule. Plaintiff Alvarez has therefore produced sufficient evidence to establish a possible causal link and, as a result, has established a *prima facie* case for retaliation. Accordingly, the Court must proceed to the next step of the burden-shifting framework.

### b. Can Defendants Articulate a Legitimate Reason for Removing Alvarez from the Schedule?[4]

Once a plaintiff establishes a *prima facie* case for retaliation, the burden then shifts to the defendant to show a "legitimate, non-discriminatory reason" for taking the adverse action

---

[4] Plaintiffs Crist and Gleed have not produced sufficient evidence to establish a *prima facie* case for retaliation under the FLSA, and therefore no additional analysis is needed to dispose of their claims.

against the employee. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007) (applying the burden-shifting framework to a retaliation claim under Title VII). The employer must show evidence that it had an "adequate, legal reason" for making its decision. *Id.* at 805-06.

Defendants have produced significant evidence demonstrating that there were legitimate reasons for removing Alvarez from the schedule. For example, Defendants have produced several disciplinary records demonstrating that Alvarez's behavior was "getting out of control," that he was insubordinate, that he verbally threatened individuals at the company, and that he failed to report for work. (*See* Doc. 44, Ex D). These disciplinary reports all support the finding that Amb-Trans had adequate legal cause to reprimand Alvarez. Thus, because Defendants have produced evidence demonstrating a legitimate reason for taking an adverse action against Alvarez, the burden shifts back to Alvarez to show pretext.

### c. Can Alvarez Show Pretext?

After the employer meets its burden of demonstrating a legitimate reason for its action, the employee must then prove that the employer's "stated reason for the adverse action was merely a pretext for the real, retaliatory purpose." *Strong*, 482 F.3d at 806. To show pretext, the employee must prove "by a preponderance" that the employer took an adverse action against her "not for its stated reasons, but in retaliation for her [protected activity]." *Id*. In other words, "the employee must prove that the adverse employment action would not have occurred 'but for' plaintiff's protected activity." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 580 (5th Cir. 2004). The Fifth Circuit has held that "temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation." *Everett v. Cent. Miss.,*

*Inc. Head Start Program*, 444 F. App'x 38, 47 (5th Cir. 2011) (unpublished) (quoting *Strong*, 482 F.3d at 808). However, the Fifth Circuit has decided to "affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation." *Strong*, 482 F.3d at 808.

As discussed *supra*, Plaintiff has not offered any evidence other than temporal proximity to establish a causal link between Alvarez's complaints about his pay and his removal from the schedule. Without any additional evidence to show that Amb-Trans had a retaliatory motive, Alvarez cannot demonstrate that he was removed from the schedule because he complained about his pay rather than because he behaved inappropriately at work. In other words, Plaintiff cannot establish that he would not have been removed from the schedule "but for" a retaliatory action in response to his complaint. Therefore, Plaintiff has not produced sufficient evidence to support a finding that Defendants' legitimate reason for removing him from the schedule was merely pretext.

### d. Summary

Plaintiffs Crist and Gleed have not produced sufficient evidence to establish a *prima facie* case for retaliation under the FLSA. While Plaintiff Alvarez has established a *prima facie* case, Defendants have satisfied their burden of showing a legitimate reason for removing Alvarez from the schedule. Plaintiff Alvarez has failed to produce sufficient evidence to show that Defendants' proffered reason is merely pretext.

Accordingly, the Court finds that Defendants' motion for summary judgment with regard to Plaintiffs' retaliation claims is granted.

### C. Improper Wages

**1. Legal Standard**

"An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that she has performed work for which she alleges she was not compensated." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)). However, the burden should not be construed as "an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687, 66 S. Ct. 1187. Rather, an employee has met his requisite burden of proof if "he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*

**2. Wage Requirements for Employees Working 24 Hour Shifts**

In his affidavit, Shaner states that his employees "generally worked 24 hour shifts or 48 hour shifts." (Doc. 44, Ex. A, 1). Therefore, the Court must consider the FLSA's compensation requirements for employees who work shifts of 24 hours or more. The Code of Federal Regulations explains the compensation requirements for such employees:

> (a) General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.
>
> (b) Interruptions of sleep. If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

29 C.F.R. § 785.22 (internal case references omitted). In short, the Code provides that if there is an agreement between the employer and the employee, then the employer may deduct up to eight hours of sleep time from the hours that the employee worked. If no express or implied agreement is present, however, then the employer must count the employee's sleeping time as hours worked.

In light of the statutory text, the Court will use the following framework to determine if Plaintiffs have met their requisite burden of establishing a *prima facie* violation of the FLSA's wage requirements for 24 hour shift employees: Plaintiffs will have to show that 1) they worked shifts of 24 hours or more, 2) they were paid for less than 24 hours of work on those shifts, and 3) there was no express or implied agreement between the employer and the employee authorizing the exclusion of the hours worked.

### a. Employees Worked at Least 24 Hours

As previously noted, Shaner states in his affidavit that his employees "generally worked 24 hour shifts or 48 hour shifts." (Doc 44, Ex. A, 1). Shaner also specifically states that Alvarez, Crist and Gleed all worked 24 hour shifts, either exclusively or in addition to working day shifts and night shifts. *Id.* at 2-3. Defendants have also provided payroll records that show both Alvarez and Crist worked 24 hour shifts on several occasions. (*See* Exs. C and F). While Defendants have not produced payroll records demonstrating the hours that Gleed worked, Defendants did provide statements from Gleed's deposition where Gleed explicitly stated that he worked 24 hour shifts. (Doc. 44, Ex. G, 10:19-22). Gleed's statements, together with Shaner's assertion, are sufficient to support a finding that Gleed worked 24 hour shifts. Accordingly, all three Plaintiffs have produced sufficient evidence for this element.

### b. Employees Were Paid for Less than 24 Hours of Work

From the payroll records that Defendants provided, it is apparent that Alvarez and Crist were deducted up to eight hours of sleep time on several occasions. (*See* Exs. C and F). Crist's records show that more than eight hours might have been deducted from his hours worked in some instances. (*See* Ex. F, payroll records for 12/27/09 – 12/31/09).

None of Gleed's payroll records have been submitted, so the Court must determine if there is any other probative evidence. In his deposition, Gleed states that he was on a 24 hour shift but was not paid for 24 hours of work. (Doc. 44, Ex. G, 10:19-21). He also explains that hours were deducted from his sleep time whether he slept or not. *Id.* at 9:16-21. Gleed's statements are consistent with the payroll records of both Alvarez and Crist, and his statements are also consistent with how Shaner describes his payment policies.[5] Thus, the Court finds that there is sufficient evidence on the record to support a finding that Gleed, as well as Alvarez and Crist, were paid for less than 24 hours of work when they worked shifts of at least 24 hours.

### c. No Express or Implied Agreement

Nothing in the record before the Court suggests that there was either an express or implied agreement between Shaner and any of his employees to exclude sleep time from their hours worked. Shaner does not mention that he entered into any type of agreement with Plaintiffs, nor do the excerpts from Plaintiffs' deposition testimonies suggest that any of them believed such an agreement existed. On the contrary, Plaintiffs' deposition statements seem to suggest that they never entered into such an agreement. For example, Alvarez states that he

---

[5] In his affidavit, Shaner states that he pays his employees for "a full 8 hours if they do not reach 5 hours of uninterrupted sleep." (Doc. 44, Ex. A, 2). Shaner's statement could imply that if his employees reach at least five hours of uninterrupted sleep then he deducts those sleep hours from their pay.

15

talked to his supervisor about concerns of not getting paid for the full number of hours that he worked (Doc. 44, Ex. D, 36:6-14), and Crist also states that he complained about his pay several times (Doc. 44, Ex. E, 22:10-14). Gleed states that he was not being paid for 24 hours of work and, although he did not complain about it, felt as though his wages were not correct. (Doc. 44, Ex. G, 8:2-4, 10:19-21). Thus, Plaintiffs' statements suggest that they had not knowingly agreed to have hours deducted from their pay but rather that they expected to be paid for the full number of hours that they were scheduled. Consequently, the Court cannot find as a matter of law that an agreement existed between Amb-Trans and its employees to exclude sleep time from hours that the employees worked. Because there is no evidence of an agreement, a reasonable juror could find that Amb-Trans' violated the FLSA's wage requirements.

### 3. Summary

Because there is evidence on the record to support a finding that Shaner excluded sleeping periods from Plaintiffs' paychecks when they worked shifts of 24 hours or more, and because there is nothing to suggest that Shaner had entered into an agreement with Plaintiffs to exclude sleeping time from the hours that they worked, the Court finds that there is evidence on the record to support a finding that Defendants violated the FLSA's wage provisions. Consequently, Defendants' motion for summary judgment as to Plaintiffs' improper wage claims must be denied.

### D. Statute of Limitations

The FLSA has a two-year limitations period. *See* 29 U.S.C. § 255(a). The limitations period extends to three years for willful violations. *Id.* To establish a willful violation, a

plaintiff must show that the "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Trans World Airlines*, 469 U.S. 111, 128, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) (defining "willful" in the context of the ADEA) (standard made applicable to the FLSA in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)).

Plaintiffs filed this case on March 4, 2011. If the two-year limitations period applies, all claims based on events taking place before March 4, 2009, would be time-barred. Since Plaintiffs in this lawsuit worked for Amb-Trans on occasion from June 2008 through September 2010,[6] some of Plaintiffs' claims will be time-barred unless Plaintiffs can establish a willful violation of the FLSA.

Upon consideration of the evidence in the record at this point, the Court cannot find as a matter of law that Defendants' actions were not willful.

In his affidavit, Shaner states that he was investigated by the Department of Labor in 2005 and changed his payment policies to match what he had learned from the investigation. (Doc. No. 44, Ex. A, 1). Shaner also states that Amb-Trans was investigated by the Department of Labor again in 2009. (Doc. No. 44, Ex. A, 2). Shaner's two interactions with the Department of Labor could be sufficient to show that he knew, or at least should have known, what payment policies were required by the FLSA. Therefore, since there is evidence on the record that could support a finding of willfulness, a three year limitations period may apply.

**E. Collective Action**

---

[6] See paragraphs two through five of Defendants' Motion for Summary Judgment (Doc. No. 44).

The FLSA authorizes employees to bring suit on behalf of themselves and other employees "similarly situated." 29 U.S.C. § 216(b). Unlike opt out class actions under Federal Rule of Civil Procedure 23(c), the FLSA requires similarly situated employees to opt in to a lawsuit by consenting in writing. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915-16 (5th Cir. 2008). Thus, a plaintiff represents only himself until other employees affirmatively opt in to the collective action. *Id.* at 919. In the Fifth Circuit, collective actions typically proceed in two stages:

> First, the plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action. Second, once discovery is complete and the employer moves to decertify the collective action, the court must make a factual determination as to whether there are similarly-situated employees who have opted in. If so, the collective action may proceed, and if not, the court must dismiss the opt-in employees, leaving only the named plaintiff's original claims.

*Id.* at 915 n.2 (internal citations omitted). A court must ensure that notice to potential class members is "timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

Notification of potential class members would not be timely in this case. Trial is set for October 29, 2012, which is less than two months away from today, and the pretrial conference is scheduled to take place in just over a month, on October 18, 2012. At this time, Plaintiffs have yet to file a motion for conditional certification. Not only has the deadline for filing pretrial motions long passed, but at this late state of litigation there would simply not be enough time before trial to prepare and distribute notice to potential class members. The Court also finds that it would be unduly burdensome to postpone the trial date any further so as to

accommodate proper notice proceedings. Plaintiffs filed their case in this Court over a year and a half ago. The discovery deadline has long passed and the trial date has already been reset multiple times. The Magistrate Judge expressed his concern with Plaintiffs' apparent failure to diligently pursue their case, and Plaintiffs were explicitly admonished not to engage in future dilatory conduct. (Mag. J. Bemporad's Order 3-4, April 25, 2012, Doc. No. 40). Despite the Magistrate Judge's exhortation, Plaintiffs have still not been diligent: they filed two motions to extend the deadline for filing a response to this motion for summary judgment, one of which was untimely, and have not filed a response even though they were told it would be considered. Plaintiffs cannot expect for the Court to permit any further significant delays in litigation, especially in light of their conduct throughout the proceedings. Therefore, because the trial date is so close, the Court finds that it would now be impracticable to provide proper notice to potential class members in this case.

### IV. Conclusion

As a result of the foregoing analysis, Defendants' Motion for Summary Judgment (Doc. No. 44) is GRANTED IN PART AND DENIED IN PART.

With respect to Plaintiffs' retaliation claims, Defendants' Motion for Summary Judgment (Doc. No. 44) is GRANTED. Plaintiffs' retaliation claims under the FLSA are therefore DISMISSED.

With respect to Plaintiffs' improper wage claims, Defendants' Motion for Summary Judgment (Doc. No. 44) is DENIED. The evidence on the record suggests that there is a genuine dispute as to whether Plaintiffs were properly compensated for their work at Amb-Trans. Likewise, the Court finds that there is a genuine dispute as to whether improper wages

were paid willfully, thus the applicable limitations period under the FLSA could possibly be three years.

Because Plaintiffs have failed to move for conditional certification, and because litigation in this case has significantly progressed, the Court finds that it would now be impracticable to provide proper notice to class members in this case.

It is so ORDERED.

SIGNED this 17th day of September, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE