# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| **David Alvarez, III, et. al** | § | |
| | § | |
| **v.** | § | |
| | § | SA-11-CV-179-XR |
| **AMB-TRANS, INC., et al.** | § | |

On October 29 and 30, 2012, a bench trial was held in this case. Pursuant to Fed. R. Civ. P. 52, the Court issues the following Findings of Fact and Conclusions of Law. In this Fair Labor Standards Act (FLSA) case, Plaintiffs were formerly employed by AMB-Trans, Inc. as Emergency Medical Technicians (EMTs). Plaintiffs allege that Defendants failed to pay them for all hours worked and failed to pay them overtime as required by the Act.

**Findings of Fact**

Plaintiffs filed this lawsuit on March 4, 2011.

EMTs are responsible for picking up patients, monitoring vital statistics and transporting the patients to various destinations. Each ambulance had an EMT driver and EMT attendant. EMT drivers would drive their ambulances on the interstate highways. The costs of transporting many patients were billed to third party agencies, which thereafter submitted the charges for Medicare reimbursement. Most patients transported by AMB-Trans, Inc. were "scheduled pickups" who were picked up from their home and driven to a dialysis clinic and then transported back to their home.

EMT drivers received a daily schedule instructing them which patients required pick up and transport to clinics, dialysis treatments, etc. On occasions EMT drivers also received emergency calls and the dispatcher would inform the EMT driver where to pick up and transport a patient. Prior to

1

starting their pick-up of patients, EMTs were required to inspect their vehicles to make sure they had all the necessary supplies and equipment and that the ambulance was in good working condition. After completing their scheduled runs, EMTs were required to clean and maintain the ambulance for future use and complete any necessary paperwork regarding a patient's delivery. EMTs also were responsible for cleaning their sleeping areas during periods when they were not deployed.

David John Alvarez, III began his employment with Defendant AMB-Trans, Inc. on May 9, 2008.[1] His last date of employment was September 20, 2010.[2]

Mr. Alvarez worked various schedules throughout his employment. Initially, he began working "48 hour shifts." He would work 2 days straight (beginning day 1 at 7:00 a.m. and ending day 3 at 7:00 a.m.) and then was off work for two days. Accordingly, one week he worked 72 hours and the following week 96 hours. Although he was on duty for 24 hours each day, he was generally only paid for 16 hours. Most "payroll recap" documents indicate he was routinely deducted for 2 meal periods and 6 sleep hours.[3] His initial pay rate was $11.00/per hour.[4] Sometime in the Spring of 2009, after working 48 hour shifts, Plaintiff was assigned to 24 hour shifts (working Monday, Wednesday and Friday). After some period of time, Plaintiff was assigned to work "day shifts." During this period Plaintiff worked from approximately 7:00 a.m. to about 5:00 or 6:00 p.m. At some point in time, Plaintiff was again assigned to work 48 hour shifts.

Plaintiff Jordan David Crist was employed with Defendant AMB-Trans, Inc. from September 14, 2009 until January 4, 2010 as an EMT.[5] He worked 48 hour shifts. Accordingly, one week he worked 72 hours and the following week 96 hours. Although he was on call 24 hours, he was generally only paid

---

[1] Plaintiffs' Ex. 11.
[2] Id.
[3] Id. See also Defendant's Ex. 2.
[4] His rate was later increased to $12 per hour and later $13 per hour. The quality of Defendant's payroll records are such that the Court is unable to pinpoint when all three Plaintiffs' pay raises became effective.
[5] Plaintiffs' Ex. 12.

for 13 hours. Most "payroll recap" documents indicate he was routinely deducted for 3 meal periods and 8 sleep hours.[6]

Plaintiff Rowland Neal Gleed began his employment as an EMT with Defendant AMB-Trans, Inc. on February 5, 2009. His employment ceased on or about November 8, 2009.[7] He worked 24 hour shifts (Monday, Wednesday, and Friday). He was initially paid $10 per hour.[8] Although he was on call 24 hours, he was generally only paid for 13 hours. Most "payroll recap" documents indicate he was routinely deducted for 2 or 3 meal periods and 6 or 8 sleep hours.[9]

Plaintiff Alvarez was reprimanded on several occasions in August and September 2010 for being disrespectful to his managers and the owner.[10] The Court notes that Plaintiffs, Defendant's owner Maurice Shaner and Defendant's President Michael Hawk mutually distrust each other. The animosity between the parties may have allowed all parties to present a biased or slanted version of the facts in this case. The Court primarily relies upon an assessment of the payroll records (considering the testimony proffered) in determining whether there has been a violation of the FLSA.

While working, EMTs were generally not allowed to leave the premises, except for transporting patients. EMTs were required to seek the permission of their supervisor prior to leaving the work area or their ambulance.

EMTs were not provided uninterrupted sleep time fifty percent of the employees' sleep time.[11] EMTs were routinely awakened to respond to an unscheduled, emergency call. On occasions, Alvarez

---

[6] Id.
[7] See Defendant's Ex. 15. AMB-Trans Inc.'s records as presented to the Court are very incomplete. In addition, the Court notes that Defendant was supplying new documents or legible documents even during trial.
[8] His rate was later increased to $11 per hour and later $12 per hour. Plaintiff Gleed testified that at some point in time, Mr. Shaner no longer deducted his meal periods and gave him the three hours in lieu of a pay raise.
[9] Plaintiffs' Ex. 13.
[10] Plaintiffs' Ex. 14.
[11] The testimony in this regard varied widely. Plaintiff Alvarez testified that during his employment there were only a "handful of times" (between five or ten times) that he received five hours or more of uninterrupted sleep.

would be visited by various individuals at the work site.[12] Plaintiff, however, remained on call during all periods of time he was at work.

Meals were taken either at the premises or in the ambulance. With the exception of 15 to 20 minute meal breaks, EMTs were not provided uninterrupted meal or break times. Plaintiffs were required to remain on call on the employer's premises or so close thereto that they could not use their meal or break times effectively for their own purposes. EMTs were not allowed to leave the premises in their own vehicles for meals without securing prior permission.

AMB-Trans, Inc. has a written policy stating that employees would be provided with "three meal periods of 60 minutes in length for each 24 hour shift. Supervisors will schedule meal periods to accommodate operating requirements. Employees will be relieved of all active responsibilities and restrictions during meal periods and will not be compensated for that time."[13] Despite the written policy, the credible evidence demonstrated that the dispatchers did not regularly schedule meal periods and EMTS were not provided an uninterrupted meal time. The Court notes that AMB-Trans, Inc. has another "Eating Periods" Policy that differs from the above policy. This second policy states that "When taking your lunch, both the attendant and the driver will go to lunch at the same time…. You may also go to lunch in a unit within one mile of the office to a café by first calling dispatch…."[14]

AMB-Trans, Inc. has a policy titled "Ambulance Payroll Method." The policy states that individuals working a 24 hour shift will be docked three hours for meals and "5 to 8 hours" of sleep time.

---

Plaintiff Crist testified that during his four months of employment, there were perhaps 8 times that he received more than 5 hours of uninterrupted sleep. Supervisor Donna Stewart testified that the EMTs were interrupted from their sleep time approximately 30% of the time. Plaintiff Gleed testified that more than 50% of the time his sleep was interrupted.

[12] Defendants repeatedly sought to attack the credibility of Plaintiff Alvarez by referencing the number of times he allegedly had visitors to the work site during his sleeping time. The relevant question, however, is whether Plaintiff was afforded the opportunity by his employer to receive at least five hours of uninterrupted sleep time, not what he did during his sleep time. If Plaintiff was violating any company policy, the employer's prerogative was to discharge the employee.

[13] Plaintiffs' Ex. 15.

[14] Plaintiffs' Ex. 18 at bates stamp number 00366.

"5 hours must be uninterrupted for any sleep time to be considered. Sleep time can be broken up into sections as long as 5 hours is uninterrupted. A maximum of 8 hours per 24 hour shift will be docked."[15]

Although all three Plaintiffs testified that they were never given any explanation by their employer about how sleeping time would be compensated, their personnel records reflect that various policies were discussed during initial employee training.[16] The policy was also posted on the company bulletin board. Testimony from witnesses for AMB-Trans, Inc. testified that all of the Plaintiffs repeatedly asked various questions about how their pay was calculated. Plaintiff Gleed testified that he knew that the deductions on his pay stub were for sleeping time. The Court finds that the EMTs and the company entered into either an explicit or implicit agreement to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours.

The dispatchers at AMB-Trans, Inc.'s work site were charged with the responsibility of recording when EMTs reported to duty, took meal breaks, began and ended their sleeping times, and recording when their meal or sleep time was interrupted because of a call. EMTs would inform the dispatcher when they arrived for their shift and when they returned to the work site. The Court finds that all other times recorded in the AMB-Trans, Inc.'s payroll records are unreliable.[17] For example, despite that all parties appear to agree that many dialysis patients were required to be at their dialysis clinic by 5:00 or 6:00 a.m., a review of Plaintiff Alvarez's records do not reflect that a dispatcher "clocked him in" as working, even though he would have been awake, made ready the ambulance, driven to the patient's home and driven to the clinic.[18] In addition, Mr. Hawk testified that the Plaintiffs were clocked out and

---

[15] Plaintiffs' Ex. 20.

[16] Defendant's Ex. nos. 1, 3, and 5.

[17] Plaintiff Crist testified, without objection, that a dispatcher (Abigail Martinez) told him that the dispatchers were told to deduct meals and to note that EMTs "were asleep for a certain amount of hours" and to make those deductions regardless of whether the EMTs took the meal or sleep period or not. Neither party called Ms. Martinez as a witness.

[18] Indeed, Mr. Hawk testified that on a few occasions he would go to the work site and wake the Plaintiffs because they had not gotten up by 4:15. Yet many records do not reflect a clock in until 6 or 7:00 a.m.

sleeping by the dispatchers when the EMTs turned in their paperwork by notifying the dispatcher at the "intercom button." Given the erratic nature of driving in a congested metropolitan area, it is highly suspect that the dispatcher routinely "clocks out" the EMT at the top of the hour.

The dispatcher's office was separate from the EMT lounge or sleeping areas. The credible evidence presented at trial was that although sometimes the dispatchers had contact with EMTs about their meal breaks, this was not done with any regularity. The credible evidence presented during trial was that generally the dispatchers merely recorded 6 to 8 hours of sleep time, without regard to whether the EMT was provided with uninterrupted sleep time. It is apparent from a review of the payroll records that oftentimes the dispatcher merely entered meal and sleep times to ensure that the total for the shift would total 13 hours. The Plaintiffs' sleeping periods were frequently interrupted by a call to duty. Accordingly, the interruptions must be counted as hours worked.[19]

The Plaintiffs' sleeping periods were interrupted to such an extent that the employees could not get at least 5 hours' sleep during many scheduled periods. The payroll records reflect on a small number of occasions Plaintiffs may have been compensated for some number of sleep hours that were interrupted. Defendants are entitled to receive a credit for those payments.

AMB-Trans, Inc. is owned by Maurice Shaner. AMB-Trans, Inc. and Maurice Shaner are employers under the FLSA. AMB-Trans, Inc. is a covered employer under the FLSA.

Mr. Shaner testified that prior to 2005, he paid EMTs a flat rate and deducted three hours for meal breaks and eight hours for sleep time. He changed his payroll practices after a DOL inquiry. In

---

[19] The testimony offered by Plaintiffs and Defendants on this subject were wholly diverging. The only reliable way the Court can ensure that the payroll records are correct is to do a side-by-side comparison of the time records to patient records for each respective day to compare when a patient was picked up and transported to a certain medical provider to the times a dispatcher recorded in the EMT's time records. No party entered any patient's transportation records into evidence to allow for such a comparison.

2006, a lawsuit was filed against AMB-Trans, Inc. and Maurice Shaner alleging that they violated the FLSA by failing to properly pay their ambulance drivers and EMTs.[20]

A complaint was filed in 2009 with the Department of Labor against Defendant AMB-Trans, Inc. The DOL advised "Mr. Shaner that the medics he paid on a salary basis were not exempt from overtime payment and he would need to pay them for their overtime hours and track any hours they worked during the night when their sleep was interrupted." Mr. Shaner was also advised that he was required to pay employees for all work time preparing trucks in the morning and work time spent at the end of the day. Defendant's Ex. 11.

Plaintiff Alvarez was provided pay advances on a couple of occasions. Plaintiff Alvarez argues that those advances were paid from his subsequent paychecks. Defendant Shaner argues that he gave Plaintiff Alvarez ten or fifteen payroll advances.[21] Defendants did not plead any counterclaim for breach of any contract. Alternatively, Defendants have failed to establish what amount of wages were advanced to Plaintiff Alvarez, what amounts were repaid, or what amount of monies may still be due.

Defendants argue that all three Plaintiffs were "overpaid" on a number of their paychecks. Mr. Shaner reaches this conclusion by reviewing the payroll records and "redoing the hours" and "redoing the math." This claim that the Plaintiffs were overpaid is without merit.

Ana Rommel and David L. Surina were never served in this case. All claims against these Defendants are dismissed.

---

[20] Plaintiffs' Ex. 16.
[21] Defendant's records contain two "promissory notes" ($500 and $200), which indicate the monies will be paid back from Alvarez's paychecks. Defendant's Ex. 1. Mr. Shaner testified that he loaned Mr. Alvarez between $3,000 and $4,000 and that Alvarez only paid a portion of those loans. Plaintiffs' Ex. 21 contains a number of other checks issued to David Alvarez for payroll advances and for "Wolfpack-Copyrite."

**Conclusions of Law**

Any finding of fact herein above which also constitutes a conclusion of law is adopted as a conclusion of law. Any conclusion of law herein made which also constitutes a finding of fact is hereby adopted as a finding of fact.

This Court has jurisdiction inasmuch as this action is brought under 29 U.S.C. §§ 201 et seq., commonly referred to as the Fair Labor Standards Act ("FLSA").

Section 206 of the FLSA requires covered employers to pay their nonexempt employees a minimum wage. Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. 29 U.S.C. § 207(a).

An individual who exerts operational control through his power to hire and fire, supervise, set wages, and maintain employment records can be individually liable under the FLSA. *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). AMB-Trans, Inc. and Maurice Shaner are employers under the FLSA.[22]

The FLSA has a two-year limitations period. *See* 29 U.S.C. § 255(a). The limitations period extends to three years for willful violations. *Id.* To establish a willful violation, a plaintiff must show that the "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985) (defining "willful" in the context of the ADEA) (standard made applicable to the FLSA in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)).

---

[22] Mitchel Shaner was previously dismissed as a defendant in this case. During trial the Court granted Plaintiffs' verbal motion to dismiss Michael Hawk and Donna Stewart as defendants in this case.

AMB-Trans, Inc. concedes that it is a covered employer under the FLSA. The Court has previously found that AMB-Trans, Inc. is a covered employer. *See Alvarez v. Amb-Trans Inc.*, 2012 WL 4103876 (W.D. Tex. Sept. 17, 2012).

An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that he has performed work for which he alleges he was not compensated. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). However, the burden should not be construed as "an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687, 66 S.Ct. 1187, 90 L.Ed. 1515. Rather, an employee has met his requisite burden of proof if "he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*.

An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". 29 C.F.R. § 785.17.

Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. 29 C.F.R. § 785.19.

Employers are required to maintain payroll records that correctly reflect hours worked by an employee. 29 C.F.R. § 516.2.

During a day shift, AMB-Trans, Inc. paid EMTs for the hours they worked, minus a deduction for a one-hour meal period taken. AMB-Trans, Inc. impermissibly deducted the one-hour meal period

because the EMTs were not completely relieved from duty. Plaintiffs only enjoyed 20 minutes of a bona fide meal period. AMB-Trans, Inc. impermissibly deducted 40 minutes each meal period.

During any 24 hour shift, AMB-Trans, Inc. generally deducted 3 hours for three meals. AMB-Trans, Inc. impermissibly deducted the three hours of meal periods because the EMTs were not completely relieved from duty. Plaintiffs only enjoyed 20 minutes of a bona fide meal period. AMB-Trans, Inc. impermissibly deducted 40 minutes each meal period.

During any 48 hour shift, AMB-Trans, Inc. generally deducted six hours for six meals. AMB-Trans, Inc. impermissibly deducted the six hours of meal periods because the EMTs were not completely relieved from duty. Plaintiffs only enjoyed 20 minutes of a bona fide meal period. AMB-Trans, Inc. impermissibly deducted 40 minutes each meal period.

The Code of Federal Regulations explains the compensation requirements for employees required to be on duty for 24 hours or more as follows:

> (a) General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.
>
> (b)Interruptions of sleep. If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

29 C.F.R. § 785.22 (internal case references omitted).

AMB-Trans, Inc. argued that the EMTs and the company entered into an agreement to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours. Although the parties expressly or impliedly reached an agreement, AMB-Trans, Inc. provided Plaintiffs uninterrupted sleep time only 50% of the time they worked.

An employer who violates the FLSA is liable for liquidated damages equal to the unpaid overtime compensation unless, after concluding that the employer acted in "good faith" and had "reasonable grounds" to believe that its actions complied with the FLSA, the district court declines to award liquidated damages (or reduces the amount). 29 U.S.C. § 260. The Fifth Circuit has explained that demonstrating good faith and reasonable grounds is a "substantial burden" borne by the employer. *Stokes v. BWXT Pantex, L.L.C.*, 424 Fed. Appx. 324, 326 (5th Cir. 2011); *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998).

The Defendants have not demonstrated "good faith" and "reasonable grounds." Although Mr. Shaner testified that he read various regulations from the Department of Labor in an alleged effort to comply with the Act, Defendants never sought legal advice and never took reasonable steps to properly document hours.

Under the FLSA, a violation is "willful" if the employer either "knew or showed reckless disregard for ... whether its conduct was prohibited by the statute." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The burden of showing that an FLSA violation was "willful" falls on the plaintiff. *See id.*; *see also Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) ("Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim.").

Plaintiffs have established that Defendants' violations were willful. Defendants had previously been audited by the Department of Labor and warned that they needed to properly pay EMTs and

properly document the hours worked. Despite the admonition, Defendants both instructed their dispatchers to disregard interruptions to sleep and meal periods and disregarded the verbal complaints made by Plaintiffs that their paychecks were incorrect.

Plaintiffs are entitled to recovery of their reasonable attorney's fees and costs. 29 U.S.C. § 216(b).

## Motion to Reopen for Additional Evidence

Defendants AMB-Trans, Inc. and Maurice Shaner filed a motion to reopen for additional evidence on November 2, 2012 (Doc. No. 74). Defendants seek to admit "run sheets" detailing the hours at which Plaintiffs Alvarez and Gleed delivered two patients to morning dialysis appointments.

"Among the factors the trial court should examine in deciding whether to allow a reopening are the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party." *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996) (citations omitted). "Trial courts as a rule act within their discretion in refusing to reopen a case where the proffered 'new' evidence is insufficiently probative to offset the procedural disruption caused by reopening." *Id.* (quoting *Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995)). A trial court's ruling on whether to reopen a case for the presentation of additional evidence "will not be disturbed in the absence of a showing that it has worked an injustice in the cause." *Id.* (quoting *Gas Ridge, Inc. v. Suburban Agric. Props., Inc.*, 150 F.2d 363, 366 (5th Cir. 1945)).

Here, the Court finds that Defendants' motion to reopen should be denied for at least two reasons. First, Defendants have not presented a compelling excuse for their failure to produce these records earlier. At trial, the parties were explicitly warned that they were required to present all

relevant records and evidence before the close of trial. Despite this warning, Defendants failed to timely offer these "run sheets" into evidence. Defendants' argument that Plaintiffs' testimony was a surprise is unavailing. Plaintiffs alluded to these patients during their case-in-chief. Defendants could have attempted to procure the records prior to the close of their case-in-chief. Alternatively, even if Defendants were surprised, they still could have moved for a continuance at any time during trial in order to have more time to search for, and submit, additional evidence. Defendants, however, never moved for such a continuance. Second, the disruption caused by reopening this case would not be offset by the run sheets' probative value. The run sheets are not dispositive of the case. They do not alter any of the Court's findings of fact or conclusions of law. Furthermore, the run sheets that Defendants seek to admit are not a complete set of records. Rather, they only relate to two Plaintiffs and two particular patients for a discrete period of time. Consequently, the Court finds that Defendants' motion to reopen should be denied.

### Conclusion

Defendants' motion to reopen for additional evidence (Doc. No. 74) is denied. Given the poor quality of the company's payroll records, the Court instructs the parties to confer with each other in an attempt to agree upon what is the proper calculation of damages in light of these findings of fact and conclusions of law. In the event that the parties cannot reach any agreement, the parties are instructed to file a brief with supporting exhibits within fourteen days. In addition, Plaintiffs shall file an application for attorney's fees in accordance with WDTX Local Rule CV-7. Plaintiffs shall be awarded their costs in the final judgment. Plaintiffs shall prepare and file a proposed bill of costs no later than 14 days after the entry of judgment. The Clerk is instructed NOT to file a judgment in this case at this time inasmuch as the issue of damages remains pending.

SIGNED this 7th day of November, 2012.

_____

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE